IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 8, 2008

**STATE OF TENNESSEE v. MARIO LESTER**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-08740     W. Mark Ward, Judge**

**No. W2007-01447-CCA-R3-CD  - Filed September 25, 2008**

The defendant, Mario Lester, was convicted of one count of burglary of a building (Class D felony) and was sentenced to twelve years as a career offender.  On appeal, he argues that the evidence was insufficient to support the conviction and that the trial court erred in denying community corrections. After careful review, we affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and J. C. MCLIN, JJ., joined.

R. Price Harris, Memphis, Tennessee, for the appellant, Mario Lester.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Scot Bearup, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts**

During the trial, testimony was elicited that the defendant was involved in a robbery of Memphis Cash and Carry, a wholesale supply store in Shelby County.  The manager of the store testified that he was notified around 4:30 a.m. on June 17, 2005, that the store alarm had been activated.  He said that he lived almost an hour away and waited for a follow-up phone call to hear what had happened.  The alarm company called him approximately thirty minutes later to inform him that the interior motion detector indicated activity inside the store.  The store manager then left for the store.

The manager testified that he received a phone call while he was en route to the store and was told that several people had been seen running from the store.  When he arrived, he found that his

office had been ransacked, a small safe had been pried open, and a larger safe had been moved from his office to the loading dock door. He noted that a small amount of money was missing and observed that the burglars had entered through the skylight. He also testified that a protective gate in front of the loading door had been cut and that the lock securing the door had been cut. He said that he did not know the defendant and did not give him permission to enter the store.

An officer with the Memphis Police Department testified that he was dispatched to the store on the morning of the incident. He said that he checked the doors and did not see anything wrong. He said he received another alarm call one-half hour later and was directed to return to the store. The officer testified that when he returned to the store, he observed a gold Ford pick-up truck in the parking lot and three "male blacks" standing on the loading dock next to the gate that had been forced open. He identified the defendant as one of the individuals on the loading dock. The officer testified that he specifically remembered the defendant because he "looked dead at me, looked at me with a surprised type of look, and then quickly ran. . . ."

Next, a second officer from the Memphis Police Department testified that he also responded to the dispatch regarding the alarm at the Memphis Cash and Carry. He said that he met the other officer at the scene and, following the first call, they found nothing amiss but, when he responded to the second call, he observed three individuals jump over a fence. He was familiar with the area and said he believed he knew where they were going after jumping the fence. He then observed the three suspects running down the railroad tracks. He ran after them and saw them jump onto a slow-moving train. He caught up with the train and told the suspects to get off the train. They complied but scattered in three directions. He caught the suspect that was closest to him and identified the defendant as that individual. He said that the defendant jumped off the train with the two other suspects when he ordered them to get off the train.

Next, a co-defendant testified that he and the defendant were part of a group that planned to rob the Memphis Cash and Carry store. He testified that they planned the burglary the day before and studied the layout of the store in preparation of their burglary. He indicated that it was his responsibility to get into the skylight and that the defendant served as the lookout. He said that they brought a ladder to the roof and initially parked the truck next door so they would not raise any suspicion if the police were alerted. The co-defendants knew the police would be called when they entered through the skylight, and they patiently waited for the police to leave before they proceeded with their plan. He said that a second alarm was triggered when they had problems opening the loading dock door. The co-defendant said that the defendant moved the truck over to the dock to speed up their escape. When the police arrived, the co-defendants were cutting through the bars of the security gate on the door.

The defendant was convicted, as charged, of burglary of a building. Following a sentencing hearing, the defendant was sentenced to serve twelve years as a career offender.

**Analysis**

On appeal, the defendant argues that the evidence was insufficient to support his conviction and that the trial court erred in denying a community corrections sentence. When a defendant questions the sufficiency of the evidence on appeal, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This court does not reweigh the evidence presented at trial; instead, on appeal there is a presumption that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding the credibility of witnesses, conflicts in testimony, and the weight and value to be given to the evidence were resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and, on appeal, the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 39-14-402 states that "[a] person commits burglary who, without the effective consent of the property owner, enters a building and commits or attempts to commit a felony, theft, or assault, in the building. Tenn. Code Ann. §§ 39-14-402(a)(1), (2). During trial, testimony was elicited that the defendant joined others in breaking into a Memphis business with the intention to steal the safe. The police observed the defendant standing on the loading dock. As the officers approached, the defendant fled the scene until he was apprehended by a police officer. The co-defendant testified that the defendant was the lookout during the burglary and that he drove the getaway truck to the loading dock for the purpose of loading the safe on it. A review of the record reflects that the evidence was sufficient to support the defendant's conviction.

Next, the defendant argues that the trial court abused its discretion and erred in denying an alternative sentence of community corrections. The defendant testified at the sentencing hearing that he was employed full-time as a laborer. He said that he drove a wrecker prior to his incarceration and that he was eligible to be rehired by his employer if granted an alternative sentence. He apologized to the court for his actions and asked for a sentence of community corrections.

The defendant acknowledged that he had a prior record of convictions including driving offenses, theft convictions, and a weapons offense. The presentence report showed that the defendant was not convicted of any crime between 1993 and 2000. He had seven felony convictions for various grades of theft including a 2001 conviction resulting in a six-year sentence.

The trial court sentenced the defendant to twelve years as a career offender, the automatic sentence for a Class D felony. *See* T.C.A. § 40-35-108(c), -112(c)(3). The record shows that the trial court was unsure if the defendant was eligible for community corrections and looked at the act to determine whether the defendant was a proper candidate for community corrections. The court proceeded on the basis that the defendant met the minimum eligibility criteria for community corrections but ultimately concluded that the defendant was ineligible.

The trial court specifically found two criteria that favored the defendant: (1) incarceration was not necessary to avoid depreciating the seriousness of the offense; and (2) measures less restrictive than confinement had not been recently applied unsuccessfully. The trial court noted that the defendant did have a failure of probation in 1993 but that it was not recent enough to count against the defendant. The trial court was most concerned about the defendant's "history of repeated lawless behavior" and found that confinement was necessary to protect society. The court was concerned that the defendant had thirteen prior convictions, including six felonies. The defendant had seven felony convictions but two of the felonies were committed on the same day. The trial court ultimately denied the defendant an alternative sentence because of his prior criminal record.

In reviewing the imposition of a sentence, we are required to conduct a *de novo* review on the record of the issues raised on appeal with a presumption that the determinations made by the trial court were correct. T.C.A. § 40-35-401(d). The burden is on the defendant to demonstrate that the sentence imposed is improper or that the findings of the trial court are not supported in the whole record. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991), Sentencing Commission Comments to T.C.A. § 40-35-401(d). Tennessee Code Annotated section 40-35-103(1) requires the courts to apply the following principles when weighing community corrections against incarceration:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or the confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; and

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . .

The State argues that the trial court found both factors (A) and (C) applicable. Our review of the record reflects that the trial court denied community corrections on the basis of factor (A). The trial court specifically stated during the sentencing hearing that, though there was a prior violation of probation, it was neither recent nor frequent.

The defendant bears the burden of demonstrating that the sentence was improper. In support of his petition, he argues that he can be employed if granted an alternative sentence, that he has a GED, and that he has two children to support. The State argues that these factors should not weigh in the defendant's favor because they did not prevent him from committing the underlying offense. After review, we conclude that the trial court did not abuse its discretion in sentencing the defendant to confinement. He has an extensive criminal history that supports the trial court's sentencing decision. The trial court was required to sentence the defendant as a career offender to twelve years. The defendant has not demonstrated that the trial court abused its discretion in ordering him to serve the sentence in confinement.

**Conclusion**

Based on the foregoing and the record as a whole, we affirm the judgment from the trial court.

_____

JOHN EVERETT WILLIAMS, JUDGE